RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4151-15T2
 A-4196-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,
v.

A.B. and P.U.B.,

 Defendants-Appellants.
_________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF A.K.B.,

 Minor.
_________________________________

 Submitted May 17, 2017 – Decided June 21, 2017

 Before Judges Fuentes and Farrington.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Hudson
 County, Docket No. FG-09-0221-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant A.B. (Anthony J. Vecchio,
 Designated Counsel, on the brief).
 Joseph E. Krakora, Public Defender, attorney
 for appellant P.U.B. (Ruth Ann Harrigan,
 Designated Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel;
 Stephanie Asous, Deputy Attorney General, on
 the briefs).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Nancy P. Fratz,
 Assistant Deputy Public Defender, on the
 briefs).

PER CURIAM

 Defendants P.U.B (Porscha) and A.B. (Anwan) appeal from a

judgment terminating their parental rights to their son A.K.B.1

The trial court concluded that termination was appropriate in

light of Porscha's cognitive delays and substance abuse disorder,

which inhibited her from safely caring for A.K.B. as it had for a

second child, in the care of his putative father. The court found

Anwan's relationship with A.K.B to be virtually non-existent on

account of his three incarcerations since A.K.B.'s placement and

failure to have served as A.K.B.'s caretaker at any time. Both

defendants challenge the court's conclusions and contend that the

New Jersey Division of Child Protection and Permanency (Division)

failed to establish, by clear and convincing evidence, the four

1
 We use pseudonyms for ease of reference and to protect the privacy
of the children. R. 1:38-3(d)(12).

 2 A-4151-15T2
criteria of the best interests of the child standard embodied in

N.J.S.A. 30:4C-15.1(a). The Division and the Law Guardian disagree

and argue that the trial court's judgment should be affirmed. On

June 19, 2016, we consolidated the appeals. Having considered the

parties' arguments in light of the record and applicable legal

standards, we affirm.

 We will not recite at length the history of the Division's

involvement with the family, which began on October 14, 2011, when

the Division was granted legal and physical custody of A.K.B. due

to inadequate housing issues and failure to submit to substance

abuse evaluation after testing positive for marijuana. This case

was subsequently closed on November 13, 2012. The case was re-

opened on allegations of phencyclidine use by Porscha's mother,

T.B., with whom she shared a residence. The Division received

reports of Porscha leaving A.K.B. for long periods of time and her

lack of compliance with the requirements of public assistance,

placing her at risk of losing monetary benefits and temporary

rental assistance. This resulted in Porscha signing a safety

protection plan which permitted homemakers into her home and barred

her from leaving A.K.B. with T.B.

 Much of the factual and procedural history that followed is

set forth in the trial court's written opinion following the

guardianship trial from which the present appeal is taken. It

 3 A-4151-15T2
suffices to say that the Division was granted custody of A.K.B.

for the second time on October 31, 2013, after Porscha failed to

comply with recommendations for substance abuse services. After

an initial placement in a non-relative resource home, A.K.B. was

placed in the home of Porscha's godmother, L.N., where he remains.

After A.K.B.'s second removal, Porscha was offered services

including counseling by a Certified Alcohol and Drug Counselor

(CADC), assessments, substance abuse treatment, psychological

evaluations, individual counseling, and parenting skills classes.

 In 2014, Porscha was referred three times to Visiting

Homemaker Service for parenting skills training and failed to

complete all three referrals. In 2015, the Division provided

Porscha with parenting skills training at the Family Success

Center, but Porscha failed to complete the program. On December

3, 2013, Dr. Robert Kanen conducted a psychological evaluation of

Porscha. In his report, he found the testing showed evidence of

cognitive limitations with low end functioning levels. He stated

further that she showed significant deficits in attention,

concentration, and short-term working memory. He further opined

that marijuana abuse contributed significantly to those deficits.

He concluded Porscha was extremely self-centered, undependable,

and emotionally unstable, and found the return of A.K.B. to her

would expose the child to unnecessary risk of harm. Dr. Kanen

 4 A-4151-15T2
recommended Porscha complete an intensive outpatient drug

treatment program, parenting classes, individual psychotherapy,

maintain housing, and acquire employment.

 Porscha was referred to Progressive Solutions for substance

abuse and counseling services in early 2014. She was discharged

after she failed to participate after April 2014. The Division

had brief contact with Porscha in September and October 2014 after

receiving a referral after Porscha was arrested and charged with

child endangerment and possession of a firearm. At that time,

Porscha submitted to a CADC. After producing multiple negative

screens, it was determined no further treatment was recommended.

Following those contacts, the Division did not have contact with

Porscha until January 2015, when it referred her to Progressive

Solutions as well as parenting skills classes and individual

therapy at Family Success Center and C-Line Outreach Center.

Thereafter, she had one contact in March and one contact in June,

and then her whereabouts were unknown until November 2015. In

November 2015, the Division scheduled visits with A.K.B. every

Monday at Division offices. Between November 2015 and January

2016, Porscha visited twice.

 The Division continued to offer Anwan services throughout the

litigation. At the time of trial, Anwan was incarcerated and had

been since April 2015. He was also incarcerated when the Division

 5 A-4151-15T2
was granted custody of A.K.B. in October 2013 and remained so

until approximately November 2014. The paternity of Anwan was

confirmed in June 2014. The Division thereafter did arrange for

him to have visits with A.K.B. while incarcerated. Three attempts

were made while he was at Hudson County Correctional Facility in

2014. One visit took place, another was interrupted because of

A.K.B.'s misbehavior, and A.K.B. slept through the third visit.

The Division met with Anwan about once per month to update him on

A.K.B.'s school and health issues. When Anwan was released from

jail in November 2014, the Division attempted to meet with him in

person on December 21, 2014, but he failed to appear. On December

22, 2014, the Division learned Anwan had been re-incarcerated. He

was released on January 8, 2015. The Division made contact with

Anwan on January 16, 2014 to meet on January 20, 2015, which

meeting he did attend. A second meeting took place on February

23, 2015. In April 2015, the Division became aware that Anwan had

been re-incarcerated. Anwan advised he did not want A.K.B. to

visit him in jail.

 The Division assessed and ruled out three alternate

placements for A.K.B. A permanency hearing was held on October

7, 2014 and again on October 6, 2015. At both hearings the court

found the Division's plan of termination of parental rights,

followed by adoption was appropriate due to Porscha's non-

 6 A-4151-15T2
compliance with services and lack of stable housing. Anwan’s

incarceration rendered him unable to parent the child at the time.

On March 31, 2015, the permanency litigation was terminated and

superseded by the filing of the guardianship complaint. The trial

began in January 2016 and concluded in March 2016. Although

Porscha was notified of the trial date, she failed to appear.

Anwan was produced from the Hudson County Correctional Center and

was represented by counsel. Taneka Jackson, defendant's paternal

aunt, and Emma Jackson, defendant's paternal grandmother,

testified on his behalf. His mother, Shawnette Burns, was expected

to testify but failed to appear on two court dates. The Division

presented the testimony of Jason Swartwood, the adoption

caseworker, and expert psychologist, Dr. Robert Kanen.

 Judge Lourdes I. Santiago carefully reviewed the evidence

presented and concluded the Division proved by clear and convincing

evidence the four prongs of the best interests test, codified in

N.J.S.A. 30:4C-15.1a(1) to (4), that:

 (1) The child's safety, health or development
 has been or will continue to be endangered by
 the parental relationship;

 (2) The parent is unwilling or unable to
 eliminate the harm facing the child or is
 unable or unwilling to provide a safe and
 stable home for the child and the delay of
 permanent placement will add to the harm
 . . . ;

 7 A-4151-15T2
 (3) The [D]ivision has made reasonable efforts
 to provide services to help the parent correct
 the circumstances which led to the child's
 placement outside the home and the court has
 considered alternatives to termination of
 parental rights; and

 (4) Termination of parental rights will not
 do more harm than good.

 [N.J.S.A. 30:4C-15.1a(1) to (4). See also
 N.J. Div. of Youth & Family Servs. v. A.W.,
 103 N.J. 591, 604-11 (1986).]

 On appeal, both defendants challenge the trial court's

findings with respect to the statutory best interests test, which

balances a parent's right to enjoy a relationship with his or her

child and the State's interest in protecting the welfare of

children. In re Guardianship of K.H.O., 161 N.J. 337, 346-47

(1999). "The four criteria enumerated in the best interests

standard are not discrete and separate; they relate to and overlap

with one another to provide a comprehensive standard that

identifies a child's best interests." Id. at 348.

 The scope of our review of the trial court's findings of fact

is well established. The trial court's factual findings will be

sustained on appeal as long as "they are supported by 'adequate,

substantial and credible evidence' on the record." N.J. Div. of

Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting

In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div.

1993)).

 8 A-4151-15T2
 Furthermore, our deference to the trial court's findings of

fact is "especially appropriate 'when the evidence is largely

testimonial and involves questions of credibility.'" Cesare v.

Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons

to J.W.D., 149 N.J. 108, 117 (1997)). We also give considerable

deference to the factual findings of the Family Part, due to the

court's "special jurisdiction and expertise in family matters."

Id. at 413.

 A. First Prong

 As noted, prong one of the best interests standard requires

the Division to establish that "[t]he child's safety, health or

development has been or will continue to be endangered by the

parental relationship". N.J.S.A. 30:4C-15.1(a)(1). To satisfy

this prong, the Division must show that the parental relationship

harmed the child's health, safety, or development, and the parental

relationship will likely have a continuing deleterious effect on

the child. K.H.O., supra, 161 N.J. at 347. The harm may, but

need not, be physical. In re Guardianship of K.L.F., 129 N.J. 32,

43-44 (1992). Termination may be warranted on a showing of

"[s]erious and lasting emotional or psychological harm", resulting

from a parent's action or even inaction. Id. at 44. Indeed, a

"parent's withdrawal of . . . solicitude, nurture, and care for

an extended period of time is in itself a harm that endangers the

 9 A-4151-15T2
health and development of [a] child." In re Guardianship of

D.M.H., 161 N.J. 365, 379 (1999).

 Although a single instance may suffice, the standard may be

satisfied by evidence of an accumulation of harm over time. N.J.

Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506 (2004).

That is the case irrespective of whether the parent is morally

culpable for that harm, so long as the parent is "unable or

unwilling to prevent [it] irrespective of [its] source". M.M.,

supra, 189 N.J. at 289. Moreover, the court need not wait "until

a child is actually irreparably impaired by parental inattention

or neglect." D.M.H., supra, 161 N.J. at 383. A risk of harm may

be shown "'not only from [a parent's] past treatment of the child

in question but also from the quality of care given to other

children in [his or her] custody.'" N.J. Div. of Youth & Family

Servs. v. I.H.C., 415 N.J. Super. 551, 573-74 (App. Div. 2010)

(quoting J. v. M., 157 N.J. Super. 478, 493 (App. Div.), certif.

denied, 77 N.J. 490 (1978)).

 In her thorough written opinion, Judge Santiago wrote as to

both Porscha and Anwan that A.K.B. has been in the physical and

legal custody of the Division for more than two years.

 This is A.K.B.'s second placement in the
 Division's custody. A.K.B. was placed in the
 Division's custody in October 2013, after
 Porscha and T.B. failed to comply with
 substance abuse services for marijuana and

 10 A-4151-15T2
 PCP, respectively, with homemaker services and
 Porscha's failure to acquire stable housing.
 At the time of the removal, [Anwan] . . . was
 incarcerated, and thus, unable to care for
 A.K.B.

 It took [Porscha] a full year from
 A.K.B.'s removal to comply with a substance
 abuse treatment recommendations. [F]rom his
 removal through the date of trial, [Porscha]
 has been inconsistent with visiting A.K.B.,
 often disappearing for months at a time and
 has been inconsistent with maintaining contact
 with the Division. [Porscha] knows the
 resource parent, however, she has failed to
 avail herself of the opportunity to visit
 A.K.B. in the resource home . . . .

 Additionally, [Porscha] has failed to
 complete court ordered services, including
 parenting skills classes and individual
 counseling despite multiple referrals . . .
 Dr. Kanen opined at trial that the child would
 be at risk of continued harm if returned to
 [Porscha]'s care as she has not been meeting
 his day to day needs for more than two years.
 A.K.B.'s needs would likely go unrecognized
 and any gains he has been made while in
 placement would likely be lost.

As to Anwan, specifically, the court found:

 [T]he relationship between A.K.B. and [Anwan]
 has been virtually non-existent . . . .
 [Anwan] was incarcerated from October 2013
 until about November 2014; December 2015 to
 January 2015; and then again from April 2015
 to present.
 [Anwan] admits that he was sentenced in April
 2015 to his alternative sentence of four to
 five years for violating his probation term
 in Drug Court . . . .

 Dr. Kanen opined that A.K.B. presented
 avoidant and insecure attachment with regard

 11 A-4151-15T2
 to [Anwan]. It does not appear that prior to
 [Anwan]'s incarceration that A.K.B. had a
 strong relationship with him, and [sic] no
 evidence in the record that he ever served as
 a caretaker.

 Anwan argues that he had never caused any harm to A.K.B. and

termination was not in A.K.B.'s best interest. Although it is

true that there is no evidence Anwan physically caused harm to

A.K.B., there is no basis in the record for his assertion that

termination is not in the child's best interests. As Judge

Santiago eloquently explained, Anwan’s unabated criminal behavior

caused him to become estranged from his own child. Although not

as visible as the scars of physical abuse, the emotional and

psychological trauma caused by the absence of a parent can also

leave a child permanently injured.

 Porscha argued the Division failed to make any accommodations

in light of her disability, referring to her low level of cognitive

function. Specifically, Porscha claims the Division failed to

make an individualized assessment of the tailored services

necessary for her. However, the record is clear that Porscha

failed to avail herself of the services offered to her, including

parenting skills classes and individual counselling. Dr. Kanen's

testimony and opinion is that "the child's safety, health and

development has been or will continue to be endangered by the

parental relationship." We are satisfied that the Division has

 12 A-4151-15T2
shown the parental relationship harmed the child's health, safety,

or development, and the parental relationship will likely have a

continuing deleterious effect on the child. Consequently, we

conclude that sufficient credible evidence in the record supports

the court's finding that the Division satisfied the first prong

of the best interests test.

 B. Prong Two

 Under the second prong, the court must consider not only

whether the parent can remove the danger to the child, but whether

he or she can do so "before any delay in permanent placement

becomes a harm in and of itself." N.J. Div. of Youth & Family

Servs. v. A.G., 344 N.J. Super. 418, 434 (App. Div. 2001), certif.

denied, 171 N.J. 44 (2002). Indeed, courts must be "cognizant of

New Jersey's strong public policy in favor of permanency." K.H.O.,

supra, 161 N.J. at 357. Termination may be appropriate, for

example, where a parent's ongoing history of substance abuse has

caused or contributed to the parent's inability to provide a safe

and stable home for the child. Id. at 352-54. Furthermore, this

prong can be satisfied "if there is clear and convincing evidence

that the child will suffer substantially from a lack of stability

and a permanent placement and from the disruption of [his or] her

bond with foster parents." Id. at 363.

 Here, Judge Santiago found the Division presented unrebutted

 13 A-4151-15T2
and credible evidence that Porscha and Anwan were unable or

unwilling to eliminate the harm facing their child. The judge

noted Dr. Kanen's credible and uncontroverted testimony that

Porscha, "continues to present as an unreliable and unstable

figure, and as a result, is unable to safely parent her child."

Dr. Kanen, who saw Porscha three times over 2012, 2013, and 2015

opined that she has "longstanding personality and cognitive issues

which impair her ability to safely care for A.K.B." Judge Santiago

found that Anwan has been unable to provide A.K.B. with a safe and

stable home due to his lengthy incarceration. The judge found,

"both parents have contributed to a delay in permanency for A.K.B.

and that would add to the harm he has already suffered." She

noted "Dr. Kanen opined that permanency is necessary to a child's

development as a child needs safety, security and consistency in

their lives." There is sufficient credible evidence in the record

to support the judge's factual findings.

 The record supports the judge's conclusion that the Division

established the second prong of N.J.S.A. 30:4C-15.1(a) with clear

and convincing evidence. Porscha and Anwan's contentions to the

contrary are without sufficient merit to warrant further comment.

R. 2:11-3(e)(1)(E).

 C. Prong Three

 The third prong of the test for termination of parental rights

 14 A-4151-15T2
requires the Division to establish that it "has made reasonable

efforts to provide services to help the parent correct the

circumstances which led to the child's placement outside the home

and the court has considered alternatives to termination of

parental rights". N.J.S.A. 30:4C-15.1(a)(3). "[A]n evaluation

of the efforts undertaken by [the Division] to reunite a particular

family must be done on an individualized basis." D.M.H, supra,

161 N.J. at 390. The reasonableness of the Division's efforts is

"not measured by their success." Id. at 393.

 In her written opinion, Judge Santiago notes that the failure

of a parent to become a caretaker for his or her child is not

determinative of the sufficiency of the Division's efforts at

family reunification. She concluded: "Here, the Division has

clearly and convincingly established through the testimony of the

Division worker and its evidence that it made reasonable attempts

to help Porscha and Anwan achieve reunification with their child."

The judge notes referrals on multiple occasions for CADC

evaluations, individual counseling, parenting skills classes and

parent/child visitation. She found:

 [Porscha] was inconsistent in engaging in
 services. One year after the child's
 placement, [Porscha] did complete a substance
 abuse assessment and an extended assessment
 in October 2014, resulting in no treatment
 recommendations. However, [Porscha] failed to
 complete recommended parenting skills classes

 15 A-4151-15T2
 and individual counseling despite numerous
 referrals.

 The court also noted Porscha's visits with A.K.B. were

sporadic through the case "as she often disappeared for months at

a time. This is the same conduct which led to the child's removal."

The judge considered and rejected Porscha's contentions that the

Division failed to provide reasonable services to help Porscha

correct the circumstances that led to her child's out of home

placement. The court pointed to Dr. Kanen's evaluation in 2012

where he found Porscha to have a low level of cognitive functioning

and that daily life and full-time sustained employment is likely

to be an uphill struggle. The judge wrote,

 In his evaluation in 2013, he found she had
 no history of mental illness, or history of
 suicide attempts. He placed her at the low end
 of the borderline range of intelligence. He
 repeated that her cognitive functioning had
 declined since her evaluation in 2012.
 However, he attributed such to substance
 abuse, which at the time was marijuana.

 Judge Santiago quoted Dr. Kanen as describing Porscha as a

"self-defeating" individual, "someone who can function on a

satisfactory basis as long as she is supported by others", that

"where she has to interact with the world around her and support

herself and her children, she is likely to be irritable, confused,

disorganized and oppositional." The judge noted that in his final

psychological evaluation of Porscha, Dr. Kanen found, "she is

 16 A-4151-15T2
likely to have difficulty adequately recognizing physical and

psychological dangers in the environment that could pose as risk

of harm to her child." Although her marijuana use appeared to be

in full remission, he concluded that her prognosis to become a

competent parent was poor. Dr. Kanen recommended that Porscha

continue with individual therapy to resolve her anxiety and develop

competent social living skills stating that her cognitive delays

might improve with such therapy but it was unclear from her history

of non-compliance with services that she would commit to the long-

term treatment needed for her to address her cognitive delays.

 As we noted earlier, Judge Santiago addressed the factors

relevant to Anwan when considering whether a parent's

incarceration supports or cautions against termination of parental

rights. Those factors included Anwan's lack of relationship with

the child prior to incarceration, the risk posed by the parent's

criminal disposition, the efforts made by the parent to remain in

contact with the child since incarceration, rehabilitation

accomplished since incarceration, the effect of the continuation

of the parent-child relationship on the psychological and

emotional well-being of the child, the need for the child to have

permanency and stability, and whether the parent child

relationship will undermine that need. The court noted Anwan's

efforts to obtain secondary education while in jail and the fact

 17 A-4151-15T2
that he was not permitted to receive substance abuse services

until he completed those educational classes. The judge concluded

that the Division's efforts as to both defendants, while

unsuccessful in ensuring reunification, were nonetheless

reasonable.

 Judge Santiago also considered alternatives to termination

of parental rights, specifically Kinship Legal Guardianship (KLG).

KLG is appropriate only when adoption is neither feasible nor

likely. N.J. Div. of Youth and Family Serv. V. P.P., 180 N.J.

494, 509 (2004). The Division caseworker testified that the

resource parent had expressed a preference for adoption. The

resource parent was Porscha's godmother and A.K.B. had been placed

with her at Porscha's request. The trial court noted the Division

explored four relatives in this matter and found that all were

ruled out and the rule-outs were proper. The judge's conclusion

that the Division satisfied the third prong of the best-interest

standard finds the support of sufficient credible evidence in the

record. Defendants' arguments to the contrary warrant no

additional discussion. R. 2:11-3(e)(1)(E).

 D. Prong Four

 To satisfy the final prong, the Division need not demonstrate

that no harm will result from termination, but that any such harm

will be outweighed by the harm resulting from non-termination.

 18 A-4151-15T2
K.H.O., supra, 161 N.J. at 355. This analysis is meant to act as

a fail-safe and prevent "an inappropriate or premature termination

of parental rights" even if the Division satisfies its burden as

to the rest of the standard. N.J. Div. of Youth & Family Servs.

v. F.M., 211 N.J. 420, 453 (2012).

 "Inherent in the fourth [prong] is that a child has a

'paramount need for a permanent and defined parent-child

relationship' . . . as well as a deep need for a nurturing adult,

commonly termed the 'psychological parent.'" N.J. Div. of Youth

& Family Servs. v. C.S., 367 N.J. Super. 76, 119 (App. Div.)

(quoting In re Guardianship of J.C., 129 N.J. 1, 26 (1992)),

certif. denied, 180 N.J. 456 (2004). When a parent has harmed a

child through abuse or neglect and is unable to remediate the

danger to the child, and when the child has bonded with foster

parents who have provided a safe and nurturing home, termination

of parental rights likely will not do more harm than good. N.J.

Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108 (2008).

"The 'good' done to a child in such cases in which reunification

is improbable is permanent placement with a loving family". Ibid.

 Here, Judge Santiago carefully recounted the results of Dr.

Kanen's bonding evaluations, noting that A.K.B. had an impaired

and insecure attachment to Porscha, was avoidant and insecure with

Anwan, and had bonded with and had a secure attachment to the

 19 A-4151-15T2
resource parent. The court relied on the unrebutted testimony of

Dr. Kanen that A.K.B. would not suffer severe and enduring harm

if permanently separated from either birth parent but that if

there was a separation or brief reaction from that separation the

resource parent could mitigate. However, if removed from the

resource parent, A.K.B. would be seriously harmed because the

resource parent has been a stable figure in his life and he would

lose the only maternal figure he knows. The judge therefore

concluded that termination would not do more harm than good.

 In summary, we are bound by the trial judge's factual findings

so long as they are supported by sufficient credible evidence in

the record. M.M., supra, 189 N.J. at 279. Here, Judge Santiago

accepted the Division's evidence as credible, and properly found

the Division satisfied all four prongs of N.J.S.A. 30:4C-15.1(a)

by clear and convincing evidence. To the extent we have not

specifically addressed any of defendants' remaining arguments, we

deem them without sufficient merit to warrant discussion. R.

2:11-3(e)(1)(E).

 Affirmed.

 20 A-4151-15T2